The opinion of the Court was delivered by
Inglis, A. J.
Persons sustaining fiduciary relations, although entitled to be reimbursed their actual expenditures in the execution of their trust, are not, in the absence of statutory regulations to this effect, entitled, merely by virtue of the relation, to any allowance for their ucare and trouble” therein. Such relations were in their origin mere honorary confidences, and the service and labor involved were considered only a fulfilment of the obligations of friendship and benevolence. A right to compensation may, however, be conferred in the creation of the trust by its *202 terms, or it may be tbe subject of express contract between the parties. A bargain to this effect, even between trustee and cestui que trust, if tbe latter be sui juris, although to be regar ¿led with jealousy and scrutinized with rigor before it will be respected and enforced, is not necessarily void. Such is the general rule of equity jurisprudence on this subject. Lewin on Trusts, 545; Hill on Trustees, 574; Robinson vs. Pett, 3 P. Wms. 132; 2 Lead. Cas. Eq. 206, et seq.
Here, at a comparatively early period of our separate jurisprudence, the general rule was, to a large extent, at least, if not entirely, superseded by statute, and the allowance of compensation for “ care, trouble, and' attendance,” in the form of commissions, was made legally -incident to the relation, certainly in several of its forms, “All and every executor, administrator, guardian, or trustee, shall for his, her or their care, trouble, and attendance in the execution of their several duties and trusts, take and receive or retain in his, her or their hands, a sum not exceeding two pounds and ten shillings for every hundred pounds which he, she or they shall hereafter receive; and the sum of two pounds and ten shillings for every hundred pounds which he, she or they shall hereafter pay away in credits, debts, legacies or otherwise, during the course and continuance of their or either of their management or administration, and so in proportion for any sum or sums less than one hundred pounds.” ■ A. A. 1745, Sec. 11. (1 Brev. Dig. 392.) The sixth section of the same statute requires “ guardians, and trustees who shall have the care, management,-and custody of the estates, real or personal, of any infant or minorf to render from time to time inventories of the trust property in their hands and accounts of moneys received, &c. From construing the two sections together, it has been commonly assumed that the statutory allowance of commissions is applicable to the case of trusteep only where their cestui que *203 trusts are infants, and therefore incompetent in law to allow compensation by their own consent, and that the claim of a trustee for an adult cestui que trust, to an allowance for his care and trouble in the administration of his trust, must rest upon the terms of his appointment, or of express contract with his cestui que trust, or else abide the application of the general rule. In Muckenfuss vs. Heath, 1 Hill Ch. 182, it was expressly decided that.a trustee, who, under a deed, held real and personal property for the use of a minor, was within the very letter of the Act of 1745, and so entitled to the commission, allowed therein. The reasoning of the Court apparently assumes that a trustee for an adult would not, under the terms of that Act, be entitled. But the' law on this particular point has not been ascertained by an authoritative adjudication. It will be observed that, although the statutory allowance to trustees, &c., is “ for their care, trouble, and attendance, in'the execution of their several duties and trusts,” yet the basis on which the commissions are to be calculated is the aggregate of the receipts and payments of money. The course of decision on the cases which have, from time to time, called for the judgment of the Court upon the proper interpretation of the statute has established this distinction. Where the legacy is of a specific thing, and to be satisfied only by the delivery of that thing in kind, commissions upon the value of such • legacy are not chargeable upon the general estate, even much less upon the legacy itself. Thus, in Ruff vs. Summers, 4 Des. 529, testator disposed of his estate chiefly in specific legacies, and the executors claimed to charge the estate in their accounts two and one-half per cent, commissions for paying or delivering these legacies, but the Court disallowed the charge. But wherever a demand against the estate, whether debt, legacy or distributive share, is to be or may be satisfied by payment in money, thére, if by consent or agreement between the parties, property, choses *204 in action, stocks, &c., are given and received as money and at a money value, commissions are chargeable upon the payment of such debt, legacy or share, as commissions are chargeable upon every transaction which is substantially, though it may be not in form, the receipt and payment of money. Thus in Deas vs. Spann, Harper Eq. 176, certain distributees purchased property at the sale of the estate and gave their bonds. On a settlement with these distributees their bonds were delivered to them as payment pro tanto of their shares, and upon the amount of these bonds so delivered, as upon money payments, the whole Court held that the executor was entitled to charge the usual commissions. So in Gist vs. Gist, 2 McC. Ch. 473, the executors sold the estate, under an order of the Ordinary, on credit, 'and took bonds from the purchasers. Some of these bonds were transferred by them in payment of debts of the testator, and the residue remained in their hands, in specie, to be distributed among the heirs. In their accounts they charged commissions on the whole amount of the bonds as on so much money. The Commissioner and the Circuit Chancellor refused the commissions on those retained for distribution. But the Court held that they were entitled to commissions on the whole. In these cases the whole property had, by competent authority, been converted into money securities. The distributees were not in terms entitled to any specific articles, but only to a share of the residue. A partition of the estate in kind was no longer possible; they could only have a decree for so much money. The executor was entitled to time to convert the securities into money. If, in anticipation of the proper period of distribution, or for any other reason, they chose to take the securities themselves, they took them as money and in satisfaction of a money demand. In Moore vs. Kohne’s Executors, decided in the Circuit Court for Charleston, at February Term, 1857, and not brought up by appeal, to which reference is *205 made in the present circuit decree, several questions were made on the subject of commissions. William Eavenel, who was one of the executors of Eliza Kohne’s will and a defendant in the cause, had also been a trustee for her and others under an agreement or deed executed by her in Pennsylvania, by the terms of which deed no provision was made for compensation to the trustee. One of the questions made disputed the right of the trustee (the cestui que trust being an adult and sui juris) to retain commissions on his receipts and payments. The deed creating the trust having been executed in Pennsylvania, where most of the parties were then resident, “ with no reference or stipulation as to performance elsewhere,” it was held that the claim of the trustee to commissions must be determined by the law of Pennsylvania, according to which law, it appeared from the evidence, commissions were in such cases allowed under the equity of an Act of Assembly. A wholly distinct question was made upon the administration, by the then defendants, as executors of the estate of Eliza Kohne, which came to their hands under the appointment of her will. The plaintiff, Prances Moore, was sole residuary legatee under this will. She filed her bill in July, 1853, for an account of the administration, and payment of the residue. Pending the proceedings, she received from the executors, while the event of her suit, so far as respects the amount of the recovery was not only unascertained but also uncertain, various public securities, at an appraised or estimated money value, some at par and others at a discount, and gave them a receipt for the aggregate value as of so much money, to wit, “ twenty-six thousand one hundred and forty-seven dollars and ninety-nine cents, on account of testatrix’s bequest of the residue of her estate,” with a stipulation that if, as the result of the accounting which was in progresss, this sum should prove to be in excess of the residue to which she should be found entitled, *206 she would make good and pay to them the balance in excess. The' .right of the executors to charge and retain commissions on the sum so paid was disputed by the plaintiff but affirmed by the Court. This seems to be in strict conformity with the principle settled by the previous cases.
Such has been the construction of our statutes on the questions made in the argument of the present cause. But the Acts of Assembly which settle the allowance to be made to persons sustaining certain fiduciary relations for their care and trouble in the administration of their trusts, do not supersede the right of parties who are thereto legally competent to make their own contracts in this ’particular. If they agree upon a different form or rate of compensation, their agreement will constitute the law of the particular case, and as such be enforced. Only when the particular law is silent, the general law speaks. In the creation of Baynard’s trust’ the parties have exercised this right and made the law for themselves. The Act of 1745 has, therefore, here no place for operation, and the question, whether, under that statute, trustees generally, without discrimination in reference to the legal competency of their cestui que trust, are entitled to the commissions therein allowed, cannot arise. It need scarcely be said that it is contrary to the rule of this Court, as it would be indeed in violation of the proprieties of its office, to go outside of the case to ascertain and affirm a general rule of law for the satisfaction of the community at large or of the profession. It-is, moreover, a familiar fact, that an expression of opinion by the Court, on a point not necessarily involved in the adjudication of the particular case before it, does not carry conviction or satisfaction to the mind of the profession, as to the final settlement of the particular question which is the subject of such expression.
The trust created by the Baynard deed consists of two parts — one, the - management of the property conveyed *207 during the residue of the settler’s life, and the other, its disposition immediately upon his death; and for the care and trouble of the trustees involved in each of these parts, a different rate of compensation and a different basis of its calculation is established. The second part of the trust requires the trustees, immediately upon Baynard’s death, to transfer and deliver to the Charleston College the one hundred and sixty-six thousand (166,000) dollars in the city of Charleston six per cent, stocks, which by the deed had been conveyed to them, and to convert all the other trust property into money by “ conveying the same for the best prices that can be obtained,” which is only another form of expression for selling. The compensation allowed them for their care and trouble in the execution of this part of their trust is five per cent, on the proceeds of such sales. The delivery and transfer of the city stocks, in conformity with the direction of the deed, is not a sale; there is no single distinguishing element of a sale in such, a transaction. But if, by any latitude of interpretation, such a transfer could be embraced under the description “ sales,” what are the proceeds of such sale ? These constitute the only basis for the calculation of the five per cent, commissions. When a sale proper is effected, the money, or the thing received in exchange for the specific article sold, constitutes the proceeds of the sale. Such a use of the term “ proceeds ” is appropriate and familiar. ' But what was received by, or proceeded to the trustees, from the transfer of this stock ? Nothing whatever. This was a mere donation, a gratuity. Of such a transaction, from its very nature, there could be no "proceeds.” The appeal claims to calculate the commissions upon, and deduct them from, the stock itself in kind. But there is clearly no authority in the deed for such a proceeding as this. By its terms the whole stock— the very one hundred and sixty-six thousand dollars city six per cent, stocks, identical with that described in the *208 conveying part of the deed — is to be "delivered and transferred.” There is no warrant for any deduction or diminution. The donee is to have the whole. But only the net proceeds of the residue of the property is to be divided among the fourteen nephews and nieces. The net proceeds must be the proceeds after subtracting therefrom some sum chargeable upon the gross proceeds, and in this case that sum clearly is whatever commissions, costs and charges are authorized to be retained at all, as a compensation for the care and trouble of the trustees in the premises.
If all the donations in a deed are specific, and compensation by commissions on the whole property is expressly provided for, or, in the absence of such express provision, is under the general law chargeable, the charge in such case can only be satisfied by a proportional abatement of all the gifts, or a quasi taxation upon each of its share of the charge; for, by the supposition, there is no other fund to satisfy the terms. But this deed provides for one specific gift, and then a distribution of the net residue, converted into money, after the deduction of commissions, costs and charges. If the view of the intention of this deed which the appeal urges could be entertained, and the trustee be held entitled to commissions on the par or other value of the stock transferred, and it were doubtful whether in such view the commissions are not expressly charged on tbe residue, yet, reasoning to the proper interpretation of the deed from the analogies to be found in the construction of the statute law, the fund chargeable with such commissions would be not the specific gift itself, but the other property of which only the net residue is given, for such residue must bear all the charges unless expressly relieved. So, also, if the terms of the deed left any room for doubt whether the settler intended that the trustee should take'commissions on the stock transferred, analogies drawn from the same source would conduct to a conclusion unfavorable to the claim of the *209 trustee. Ruff vs. Summers. But the language of the trust-deed itself clearly enough evinces the intention of the settler, and resort to such extraneous aids is not necessary. The Court is well satisfied that the trustee is not entitled to the commissions which are claimed by this appeal, either as against the specific stock or against the general estate.
The decree of the Circuit Court is affirmed, and the appeal is dismissed.
Dunkin, C. J., and "Wardlaw, A. J., concurred.

Appeal dismissed.